## MIAMI COAL COMPANY *v.* LUCE.

[No. 11,046.   Filed June 30, 1921.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Finding.—Sufficiency of Evidence.—Cause of Death.*—In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), evidence *held* sufficient to sustain a finding by the Industrial Board that an employe's death resulted from injuries sustained in defendant's coal mine, while he was firing shots therein, and not from a mechanical obstruction of the bowels, independent of the injuries, as contended by the employer.   p. 246.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury Concurring Cause of Death.—Right to Compensation.*—The injury to a servant need not be the sole cause of his death, in order that his dependent's may be entitled to compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918), it being sufficient if the injury is the concurring cause.   p. 249.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's

Compensation Act by Oka Luce against the Miami Coal Company. From an award for applicant, the defendant appeals. *Affirmed.*

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, W. Paul Stratton* and *John S. Taylor,* for appellant.

*Harold A. Henderson,* for appellee.

DAUSMAN, J.—The Industrial Board found that on April 26, 1920, one Walter G. Luce received a personal injury by accident arising out of and in the course of his employment and resulting in his death on May 12, 1920. Compensation was awarded the widow as sole dependant. Appellant's only contention is that there is no evidence to sustain the finding that the workman's death resulted from the injuries occasioned by the accident.

The undisputed evidence discloses that at the time of the accident the workman was about forty-eight years of age; that he was in good health; that he had never suffered from stomach or bowel trouble; that he had worked almost every day for twenty-five years; and that he weighed 160 pounds. He was engaged in firing shots in the mine, and as the result of an explosion he was injured. Soon thereafter he was taken to a hospital at Terre Haute.

Dr. Knoefel described his condition as follows: "A very severe scalp wound on top of head, involving the pericranium; the scalp was both lacerated and burned; there were numerous small lacerations and minor burns on the face, arms, forearms, and hands; both ankles were fractured; the right ankle sustained a compound fracture, the wound in the soft structures being on the anterior surface and about three inches above the ankle.

In addition to the foregoing, the X-ray revealed a fracture of anterior surface of the left tibia at lower end; comminuted fracture of right leg involving tibia

and fibula; and a possible fracture of the fourth cervical vertebra. There was much displacement of the fragments. He was in deep shock when admitted to the hospital. His pulse could not be felt, and the prognosis was very bad. On April 29, his general condition was very much improved. On the evening of May 11, he began vomiting and became very ill. He exhibited a marked degree of shock. This condition progressed and his death followed on the next day."

Other evidence establishes without contradiction that the unfortunate man was injured even to a greater extent. For a time he was unable to use either arm, but later he had some use of the left arm. His body generally was badly bruised. There were two perforations in his skull. He was unconscious and delirious nearly all the time. He was kept on a cot and on his back. He had nurses. Nearly all his food was in the form of soup, and he took very little of that. His wife was with him every day from 7 a.m. to 9 p.m.

When the man died at the hospital, Dr. Knoefel notified the coroner of Vigo county. Thereupon Dr. Danner, deputy coroner, proceeded to hold an autopsy. This he did without the knowledge of the wife. He stated that in his opinion the man "died from a mechanical obstruction of the bowels and his death was not due to any physical injury received in a coal mine."

Dr. Johnson, who accompanied the injured man to the hospital, stated:

"I saw Mr. Luce on the night following the injury, at St. Anthony's Hospital. He was in bad condition from shock and had a severe laceration of the scalp which was also burned. He had burns of both forearms, and both legs were broken. I treated him for shock, cleaned up his scalp and sutured the scalp wounds. At that time I thought he would probably die within the next twenty-four hours. I saw him in a

casual way several times during the next week and his general condition was very much improved and it looked as though the outcome would be favorable. I attended the autopsy in which intestinal obstruction was found and there was no evidence of any abdominal injury to account for the obstruction. In my opinion he died from intestinal obstruction and from causes independent of the injuries received."

The statements of these three doctors were made in writing, and none of them was cross-examined. Dr. White testified in response to a hypothetical question that in his opinion the injury occasioned by the explosion was the proximate cause of death. He also said that an injury to the spine might cause paralysis of internal organs. It should be noted, however, that the hypothetical question did not include the feature of an obstructed bowel.

The opinions of Drs. Danner and Johnson suggest some interesting questions. Why was the autopsy held? Was there any suggestion of crime? Was it purely in the interest of medical science? Was it on the request of any interested party? The deputy coroner's statement is dated Nov. 24, 1920. Why did he not submit a copy of his official record made at the time of the autopsy? Assuming that the "mechanical obstruction" was an impaction, the contents of the bowel forming a plug, how long had it been there? The evidence shows that before the accident the workman was in good health. If there had been no accident and he had continued at his work, having the benefit of his daily exercise, would the obstruction have come into existence? Might not an atmospheric concussion of such violence as to produce the other injuries be sufficient also to cause mechanical injury to the abdominal organs even though there be no visible traumatism? For fifteen days he lay on his back, suffering from his injuries

and from shock, his heart exceedingly weak, partially paralyzed, and most of the time delirious and unconscious. Did these conditions have nothing to do with the origin of the obstruction? If he had been in his usual good health in all other respects, would the obstruction have been fatal? It was the duty of the board, when weighing the evidence, to take into account all considerations of this character. The board would have been justified in rejecting entirely the opinions of Dr. Danner and Dr. Johnson and in relying on the opinion of Dr. White. But fortunately in this case the board was not limited to opinion evidence. It was the duty of the members of the board to bring to bear their experience and knowledge, and to exercise their reasoning powers. Indeed, if it were not for the saving grace of what we call common sense, justice would be defeated in almost every case where opinion evidence is admitted. Moreover, it is sufficient if there be a causal connection between the injury and death. The injury need not be the sole cause. It has often been held that if it be a concurring cause it is sufficient. On this question of fact the board reached a legitimate conclusion.

Award affirmed.