**INTER-CARIBBEAN SHIPPING CORPORATION, Appellant,**

v.

**Daniel J. SENTILLES, Appellee.**

No. 16776.

United States Court of Appeals
Fifth Circuit.

June 9, 1958.

Rehearing Denied July 16, 1958.

Robert J. Beckham, Miami, Fla., Scott, McCarthy, Preston, Steel & Gilleland, Miami, Fla., for appellant.

Fred Patrox, Milton Kelner, Kelner & Lewis, Miami, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Inter-Caribbean Shipping Corporation, owned the S.S. Montego which it operated for the importation of bananas into the United States from South American ports. Daniel J. Sentilles, the appellee, described himself as a marine engineer specializing in refrigeration. He was employed by the appellant to operate or supervise the operation of the Montego. He was responsible for the employment of the captain of the vessel. In April of 1953 the vessel was bringing a cargo of bananas from Santa Marta, Colombia, to Miami, Florida. Prior to the voyage the appellee signed on as a member of the crew in the capacity of chief engineer. The sea had been heavy from the time the ship left Santa Marta. During the second or third day out, and while the appellee was crossing the deck, the vessel fell away from him. He fell and slid, or was washed by a wave, some distance into the protective chain around the edge of the ship. He didn't know exactly but imagined he inhaled some water. The day following or the second day after this incident the appellee developed a cough and felt like he had the flu. Although he spent quite a bit of time in his bunk, he made the usual inspections of equipment. He complained of head and chest pains until the ship reached Miami two or three days later.

The appellee left the ship when it reached Miami. About ten days later he was in New York where, his cold persisting, he consulted a doctor who told him, the appellee, he was a sick man and

should be hospitalized for further checking. Appellee went to New Orleans and went into a hospital. There he contacted Dr. Charbonnet who had treated the appellee off and on for almost twenty years. The doctor made an examination including X-rays. Dr. Charbonnet called in Dr. LeDoux, a specialist in internal medicine with considerable experience in connection with chest diseases and tuberculosis. Dr. LeDoux made an examination. The discovery was there made that the appellee, who had been a diabetic for some years, then had active pulmonary tuberculosis. He transferred to the United States Public Health Service Hospital in New Orleans where he was treated for diabetes and tuberculosis. He was discharged from this hospital to out-patient status on November 18, 1953. In October, 1956, the appellee sued Inter-Caribbean Shipping Corporation, the owner of the Montego, claiming $75,000 damages as a result of his injuries, and for maintenance and cure. An unseaworthy vessel and negligent operation of it were alleged. A jury trial was had. The appellant moved for a directed verdict at the close of the appellee's testimony and again at the close of all the testimony. Both motions were denied. A verdict for the appellee in the amount of $20,000 was returned upon which judgment was entered. The appellant moved the court to set aside the judgment and enter judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion was denied. This appeal followed. The sole question argued is whether there was sufficient evidence that the disabling illness of the appellee was caused by the occurrences on the S.S. Montego.

Testimony by deposition of four doctors who had treated or examined the appellee was introduced on his behalf. Dr. Charbonnet had known and treated the appellee over a period of about eighteen years. His testimony disclosed a record of a number of past illnesses of the appellee including jaundice, hepatitis and bronchial pneumonia. He was consulted by the appellee when the appellee reached New Orleans after being in New York. From the report of appellee's New York doctor, Dr. Charbonnet learned that the appellee had a lung condition. Dr. Charbonnet was not, as he put it, "in that particular line" and would leave the diagnosis to Dr. LeDoux, the expert consultant whom he called in. Dr. LeDoux saw the appellee approximately twenty-four times while the appellee was at the Hotel Dieu Hospital. He found that the appellee then had pulmonary tuberculosis which apparently had been present for a year or nearly so at the time he was admitted to the hospital and that symptoms of tuberculosis had existed for about eight months. The doctor thought the X-rays indicated the possibility of a tubercular condition as early as 1950 and that it was clearly so in June, 1952. A light blow on the chest, he testified "would be unlikely to spread the disease, whereas a severe blow would be certainly more likely". So also, he said, tuberculosis can be aggravated by diabetes. Dr. Jacobs, who treated the appellee at the United States Public Health Hospital, testified that dormant tuberculosis could be activated and aggravated by "anything that weakens the body, whether it be a physical blow, a disease like diabetes, nutritional disturbance such as starvation or vitamin deficiency, perhaps even a severe emotional disorder can reduce the ability of the body to fight off the effects of tubercular bacilli." At the time Dr. Jacobs saw the appellee at the hospital the appellee was "very much agitated" and "very much disturbed about a number of things." Either diabetes or trauma, he stated, or a combination of the two could have aggravated the appellee's preexisting tubercular condition. He told of a study made by him of diabetes and tuberculosis and testified "that people with diabetes are inordinately susceptible to developing tuberculosis, perhaps one to five times as great as the general population."

The appellee called as one of his witnesses, Dr. Seymour B. London, who had never examined the appellee. He testified, basing his opinion on the testimony of the other doctors given by deposition,

**158**

that he thought the fall probably aggravated the appellee's condition. But he admitted there were other factors which might have caused the aggravation of the tuberculosis and he had no way of telling which, and that it might have been any one or all of them.

The rule as to the medical testimony respecting causation which is required to take a case to a jury has been thus stated:

> "It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have', 'may have', or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have,' 'may have,' or 'could have' resulted or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence. * * * 135 A.L.R. 516."

The foregoing rule has been stated and applied in Bearman v. Prudential Insurance Co., 10 Cir., 1951, 186 F.2d 662; and Chicago Great Western Railway Co. v. Smith, 8 Cir., 1955, 228 F.2d 180. And see New York Life Ins. Co. v. Trimble, 5 Cir., 1934, 69 F.2d 849; Southern Stevedoring Co. v. Henderson, 5 Cir., 1949, 175 F.2d 863; Fort Worth & Denver City Ry. Co. v. Smith, 5 Cir., 1953,

206 F.2d 667. The least that the appellee was required to prove was that the aggravation of his tubercular condition was probably caused by the incident on shipboard. The most that he established was that the incident was a possible cause of the aggravation. This was not enough. The motion of the appellant for a directed verdict should have been granted and judgment for it will be here rendered.

Reversed and rendered.

RIVES, Circuit Judge (dissenting).

The jury had a right to believe that the appellee was violently knocked down and washed some twenty-four feet along the deck into the chains around the ship. His skin was scratched and scraped on the deck, his shirt ripped open, his khaki pants torn on the seat, his head, shoulder, back, and ribs struck so hard that he thereafter made complaints about them to the Captain. Within a short time he became ill, and within about two weeks his illness was diagnosed as active tuberculosis. Before his injury in April 1953, the appellee had been examined repeatedly by Dr. Charbonnet throughout the latter part of 1952, and as late as February 1953, two months before the accident, and Dr. Charbonnet had found no chest difficulties and no reason to suspect tuberculosis.

In reaching their verdict the jurors were not confined strictly to the opinions of the physicians, indeed those opinions were not binding on them. The jury had the right, and was under the duty to take a broader view, and to consider *all* of the facts and circumstances disclosed by the evidence. Upon such a view, I would agree with the district court that there was substantial evidence to support the verdict of the jury. I, therefore, respectfully dissent.

Rehearing denied: RIVES, Circuit Judge, dissenting.