## SENTILLES *v.* INTER-CARIBBEAN SHIPPING CORP.

No. 6.  Argued October 19, 1959.—Decided November 23, 1959.

*Milton Kelner* argued the cause for petitioner.  With him on the brief was *John K. Lewis.*

*Robert J. Beckham* argued the cause for respondent.  On the brief was *George F. Gilleland.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The petitioner brought this suit against the respondent to recover damages sustained by him allegedly as a consequence of a shipboard accident while serving as a crewmember on the respondent's vessel in the Caribbean.  As the vessel encountered a heavy sea, petitioner was pitched

into the air and fell back to the deck, where, upon landing, a wave washed him a considerable distance. Shortly after the accident, the petitioner became quite ill and was hospitalized and treated for a serious case of tuberculosis. The respondent's liability for the accident was predicated on fault under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, and alternatively on breach of the maritime duty to furnish a seaworthy vessel. The petitioner's theory was that the accident activated or aggravated a previously latent tubercular condition.[1] The case was submitted to a jury in the District Court, where a verdict was returned for the petitioner, and judgment entered thereon. In the Court of Appeals, the respondent did not argue that the jury could not have with reason found it liable for the accident, but contended solely that the evidence did not justify the jury's conclusion that the accident caused the serious illness that followed it. The Court of Appeals agreed with the respondent's contention and reversed, 256 F. 2d 156. We granted certiorari on a petition in which it was asserted that the Court of Appeals had applied an improper standard in reviewing the medical evidence and in examining the judgment rendered on the jury's verdict. 359 U. S. 923.

There was evidence that petitioner (whose medical history was an active one) had been examined several times by his regular physician in the year preceding the accident, as recently as two months before it, with no appearance of tuberculosis being then noted. During the petitioner's acute tuberculosis subsequent to the accident, a specialist re-examined X-ray pictures taken in the years preceding the accident, and concluded that

---

[1] Maintenance and cure in respect of the illness were also claimed; this was viewed as presenting a causation problem similar to that posed by the claim for indemnity damages.

they did in fact reveal a pulmonary lesion, at first involving a "small scarred inactive area." "In retrospect," the specialist felt that the lesion had been tubercular. In response to a hypothetical question as to the effect of an accident like petitioner's on the aggravation or activation of a pre-existing, dormant tubercular condition, the specialist gave an opinion that "acute dissemination of the tuberculosis" might be a consequence of the accident. Another specialist, who had treated petitioner during his hospitalization after the accident, posited the trauma and petitioner's pre-existing diabetic condition as the most likely causes of the aggravation of the tuberculosis, though he was not able to state "which of the two it is more likely was responsible in this instance." Another medical expert, who had not personally examined petitioner, when questioned hypothetically, was of opinion that the accident "probably aggravated his condition," though he would not say definitely: "We don't ever select one item and say that is the cause of any particular aggravation."

The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation.[2] They were en-

---

[2] For a discussion of the reluctance of medical opinion to assign trauma as the cause of disease, and of the varying medical and legal

titled to take all the circumstances, including the medical testimony, into consideration. See *Sullivan* v. *Boston Elevated R. Co.,* 185 Mass. 602, 71 N. E. 90; *Miami Coal Co.* v. *Luce,* 76 Ind. App. 245, 131 N. E. 824.[3] Though this case involves a medical issue, it is no exception to the admonition that, "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. . . . The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. . . . Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant* v. *Peoria & Pekin Union R. Co.,* 321 U. S. 29, 35. The proofs here justified with reason the conclusion of the jury that the accident caused the petitioner's serious subsequent illness. See *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500.

*Reversed.*

MR. JUSTICE WHITTAKER, finding in the record direct medical testimony expressing the opinion that petitioner's latent tubercular condition actually was activated by the trauma complained of, concurs.

concepts of causation, see Small, Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation, 31 Tex. L. Rev. 630.

[3] The medical testimony in the case last cited moved the court to say: "Indeed, if it were not for the saving grace of what we call common sense, justice would be defeated in almost every case where opinion evidence is admitted." *Id.,* at 249, 131 N. E., at 826.

Mr. Justice Stewart, concurring.

Cases like this, I am firmly convinced, do not belong in this Court. To review individualized personal injury cases, in which the sole issue is sufficiency of the evidence, seems to me not only to disregard the Court's proper function, but also to deflect the Court's energies from the mass of important and difficult business properly here. All this has been elaborated *in extenso* by others, and there is no point in repeating or paraphrasing their words. Suffice it to note that I agree with what they have said. See, *e. g., Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 524 (dissenting opinion); *Dick* v. *New York Life Ins. Co.*, 359 U. S. 437, 447 (dissenting opinion).

Yet under our rule, when four members of the Court vote to grant a petition for certiorari, the case is taken. If this rule is not to be frustrated, I can, as presently advised, see no escape from the duty of considering a case brought here on the merits, unless considerations appear which were not apprehended at the time certiorari was granted. In short, on this score I agree with the views expressed by Mr. Justice Harlan in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 559 (dissenting opinion). See Mr. Chief Justice Stone's concurring opinion in *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, at 358.

Upon an independent review of the record in this case, I concur in the result.

Mr. Justice Harlan concurs in this opinion.

Mr. Justice Frankfurter, dissenting.

"We do not grant a certiorari to review evidence and discuss specific facts." *United States* v. *Johnston*, 268 U. S. 220, 227. Thus Mr. Justice Holmes, speaking for a unanimous Court thirty-five years ago, summarized the

practice of the Court in abstaining from exercising its certiorari jurisdiction for the purpose of reviewing facts and weighing evidence in relation to them. This practice obviously derived from the Evarts Act of 1891, by which Congress established intermediate courts of appeals to free this Court from reviewing the great mass of federal litigation in order to enable the Nation's ultimate tribunal adequately to discharge its responsibility for the wise adjudication of cases "involving principles the settlement of which is of importance to the public as distinguished from that of the parties," *Layne & Bowler Corp.* v. *Western Well Works, Inc.*, 261 U. S. 387, 393. Since Mr. Chief Justice Taft announced this for the Court in 1923, cases of obvious public importance demanding the Court's attention have increased in number and difficulty. The practice of not taking cases turning solely on the evaluation of evidence has been consistently adhered to, barring an occasional sport like *Dick* v. *New York Life Insurance Co.*, 359 U. S. 437, except in the special class of cases arising under the Federal Employers' Liability Act and its twin, the Jones Act. The fluctuating interest in this special class of cases by the necessary number of Justices for granting certiorari, first on behalf of employers, see Frankfurter and Landis, The Business of the Supreme Court (1928), 207–209, and more recently on behalf of employees, has disregarded the normal practice.

The oral argument overwhelmingly confirmed what the petition had already made clear, that this is the kind of case which, in the language of my Brother STEWART, does not "belong in this Court." To entertain the case merely because argument has been had does not lessen the disregard of the Court's practice, formulated in Rule 19. The Court has in scores of cases dismissed the writ of certiorari even after oral argument, when the true basis for a certiorari was lacking. Even in criminal cases

involving sentences of life imprisonment this practice has been followed. See *Triplett* v. *Iowa,* 357 U. S. 217; *Joseph* v. *Indiana,* 359 U. S. 117. Again to quote Mr. Chief Justice Taft in *Layne & Bowler Corp.* v. *Western Well Works, Inc., supra,* at 393, "it is very important that we be consistent in not granting the writ of certiorari . . . ." As a general practice the Court does not review cases involving merely individualized circumstances not unlike the type of factual situations arising in the application of the Federal Employers' Liability Act and the Jones Act. Since this case does not "belong in this Court," to have brought it here was an undue exercise of judicial discretion. Accordingly, I would dismiss the writ as improvidently granted. See my opinion in *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 524.