**James A. LAWRENCE**

v.

**GULF OIL CORPORATION.**

**Civ. A. No. 27241.**

United States District Court
E. D. Pennsylvania.

March 29, 1966.

Avram G. Adler, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Mark D. Alspach, Krusen, Evans & Byrne, Philadelphia, Pa., Thomas J. McKey, Jr., Bogle, Bogle & Gates, Seattle, Wash., for defendant.

DAVIS, District Judge.

The matter now before the court is the defendant's motion for judgment n. o. v. or in the alternative for a new trial.

The plaintiff was a seaman and member of the crew on the S.S. Gulfprince, owned by the defendant. He contended that the vessel was unseaworthy and the defendant negligent because of serious injuries he sustained when the boatswain assaulted him on June 15, 1959. The case proceeded to trial and the jury returned a verdict in favor of the plaintiff in the amount of $126,000.

The defendant now asserts four grounds to sustain his post trial motions. Three of the contentions are clearly without merit and will not be discussed. The one remaining question is whether the court erred in permitting the jury to consider the permanent total disability of the plaintiff as an element of damages. At this stage the defendant does not deny that the plaintiff sufficiently connected his impairment to the injuries aboard the S.S. Gulfprince. It contends only that there was no medical testimony even from the plaintiff's physician indicating that the injuries sustained were of a permanent nature.

The court has carefully reviewed the testimony of Dr. Dillon, the plaintiff's medical expert, and concludes that there was sufficient evidence of a permanent condition to warrant the jury's consideration of this factor in assessing damages.

The plaintiff was injured in June 1959 and the trial occurred in February 1965, over five and one-half years later. During this period, Dr. Dillon examined the plaintiff five times, and on each occasion, he noticed a deterioration in the plaintiff's medical state. His testimony is replete with such statements as, "He is slipping each time I see him" or "This

man, as I keep saying, is deteriorating psychologically with each time I see him."

He also testified as to the permanency of Mr. Lawrence's condition as follows:

Q. "Doctor, what is the prognosis for Mr. Lawrence? * * *

A. " * * * My prognosis so far as Mr. Lawrence is concerned is very grave. This man is seriously ill at the present time with a severe anxiety neurosis, and also there are certain indications that he is beginning to have breaks with reality, that he is beginning to misinterpret facts, and at the present time he is verging on a psychosis, and psychosis is the most severe form of mental illness, where the patient loses touch with reality * * *.

Q. "Now, what, if anything, can be done for him at this point—at this time?

A. "Well, from a psychiatric standpoint he presents a most difficult treatment problem at this point. The way this man should be handled would be to see someone, a psychiatrist, on an outpatient basis, where he can not be confined, where he can come in and start talking about his feelings, talking about his problems, and eventually, depending upon the ability of Mr. Lawrence to gradually work through his problems, depending on the experience of the psychiatrist and the ability of the psychiatrist, that eventually this man could be brought around to understand that these symptoms he is experiencing are as a result of an emotional—a severe emotional upheaval—and then to work through with him the causes of the upheaval, the basic problems involved that brought about these symptoms, and in that way he could be helped. This is the only way he could be helped.

Q. "What are the chances of success?

A. "Problematical. Problematical. It has been going on a long time now, and the longer these symptoms and this condition is allowed to go on the more fixed it becomes, the more immutable, the more difficult it is to change it, but certainly an effort should be made, and there is a possibility he could be helped."

From this somewhat lengthy quotation it is evident that Dr. Dillon believed the plaintiff was suffering from severe and difficult psychiatric problems and that the chances of successful rehabilitation were only "problematical". Of course, he admitted that there was a possibility that the plaintiff could be helped, but then such a possibility exists in most, if not all, cases.

The jury could reasonably find that his condition was permanent after listening to the testimony of the expert who had observed and examined him over a five and one half year period. Their decision was not mere guesswork, for they had credible evidence before them indicating that the plaintiff had consistently deteriorated since his injuries and that his chances of recovery were very small. The court did not err in permitting the jury to award damages on this basis. See Great American Indemnity Co. v. Holloway, 286 F.2d 106 (5th Cir. 1960); A. H. Bull Steamship Co., Inc. v. Ligon, 285 F.2d 936, 88 A.L.R.2d 479 (5th Cir. 1960); Widder v. New York, Chicago & St. Louis Railroad Co., 142 F.Supp. 830 (W.D.Pa.1955). Cf. Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959).

We cannot as a matter of law grant a judgment n. o. v. and we would consider it an abuse of our discretion to grant a new trial.

Motion denied.