**L. T. BURNETT et al., Plaintiffs and Cross-Defendants,**

v.

**The QUAKER OATS COMPANY, Defendant and Cross-Plaintiff.**

Civ. A. No. 2056.

United States District Court
E. D. Tennessee,
Northeastern Division.

Feb. 7, 1968.

See also D.C., 289 F.Supp. 283.

Bacon & Dugger, Morristown, Tenn., John F. Dugger, Morristown, Tenn., and James W. Dorsey, Atlanta, Ga., of counsel, for plaintiffs and cross-defendants.

Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., R. Arnold Kramer and David E. Rodgers, Knoxville, Tenn., of counsel, for defendant and cross-plaintiff.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action in which the plaintiffs, as partners in a comparatively large poultry producing and processing operation, sued the defendant, a manufacturer and supplier of poultry feed,

for $750,000 in damages for allegedly selling the plaintiffs breeder-hen poultry feed concentrate contaminated[1] with nicarbazin,[2] resulting in a diminution of the plaintiffs' egg and poultry production. After a jury verdict for the defendant,[3] the plaintiffs interposed their motion for a new trial, claiming that the verdict was against the clear weight of the evidence and that such verdict indicated that the jury was "* * influenced by partiality, passion, prejudice or some misconception of the law or material evidence."

■ The plaintiffs offer no showing of the manner in which the jurors may have been influenced against them. During the ten days of trial, no evidence offered by the plaintiffs on the issue of liability was excluded, and none such offered by the defendant was admitted over their objection. The issues of liability were submitted to the jury by the Court on the theory of strict liability. There were no special requests by the plaintiffs for instructions to the jury outstanding at the time of the Court's charge, and the plaintiffs registered no objection to that charge. Thus, there appears to have been no undesirable or pernicious element which has occurred or been introduced into this trial, and it would constitute reversible error for the trial judge now to grant a new trial on the second ground urged by the plaintiffs. Cf. Lind v. Schenley Industries, Inc., C.A.3rd en banc (1960), 278 F.2d 79, 88[16], certiorari denied (1960), 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60, cited and quoted from in Duncan v. Duncan, C.A.6th (1967), 377 F.2d 49, 53–54[7].

The remaining question for decision is whether the verdict of the jury was against the clear weight of the evidence. This presents the Court with a difficult issue, because the Court feels that findings on the factual issues favorably to the plaintiffs would have produced the more reasonable results. Simultaneously, the Court can discern the manner in which the jurors herein arrived at the unanimous conclusion which they reached.

■ All the breeder hen concentrate which the plaintiffs purchased from the defendant originated in either the Quaker mill at Chattanooga, Tennessee, or its mill at Asheville, North Carolina. There was evidence permitting the jury to draw the inference that the flushing-out procedures at these mills, after manufacture of a complete poultry feed containing nicarbazin for ingestion by broiler-sized chickens and before mixing of breeder-hen concentrate, was efficient enough to minimize even the possibility that nicarbazin from the broiler-chicken whole feed would contaminate a subsequent mixing of breeder-hen concentrate. One of the essential elements to an award to the plaintiffs under the doctrine of strict liability was a finding by the jury that the breeder-hen concentrate was contaminated by nicarbazin at the moment it passed from the defendant Quaker to the plaintiffs, the Burnetts.

In its integrated operation, the plaintiffs mixed their breeder-hen concen-

---

1. It is undisputed that the presence of more than minimal quantities of the drug nicarbazin in poultry feed for breeder and other laying hens is a contaminant.

2. This drug is a coccidiostat which is widely used as an agent to reduce the population of a pathogenic coccidium to minimize infective disease caused in poultry by the fungus, coccidioides immitis, and to provide an immunity thereto. Ingestion by growing broiler-sized chickens, but not breeder or other laying hens, is customary, although some poultrymen do not utilize it at all.

3. The jury also returned a verdict for the defendant, as plaintiff, in a companion case, consolidated and tried with this action, in which the defendant Quaker sued to recover on certain promissory notes and an open account given by the plaintiffs for the purchase of feed. The plaintiffs here defended that action on the theory of failure (or partial failure) of consideration, due to the alleged contamination of the feed concentrate purchased by them from the defendant.

trate in their mill at Newport, Tennessee. It was then fed to the breeders at grow-out operations of either the Burnetts or of farmers engaged contractually in such production for them at their own locations. Although there was testimony from the Burnetts[4] that they never used nicarbazin in the pertinent period in the final mixing of complete feed for any of their poultry, broiling-sized chickens included, the jury weighed the evidence provided by this testimony and judged the credibility of the witnesses. A reasonable inference could have been drawn conceivably that any nicarbazin ingested by the Burnetts' breeder-hens could have been present in the whole feed as a result of action by someone other than the employees of the defendant Quaker.

There was expert testimony that eggs produced by breeder-hens having some or all of the characteristics, which some witnesses testified were present in the eggs under consideration, could result only from the ingestion of nicarbazin, from infectious bronchitis, or from Newcastle's disease. Whether the symptoms noted by some of the witnesses were identical with the accepted nicarbazin syndrome was another essential question for resolution by the triers of fact. This was true also of whether there had been distinguishable damage to the plaintiffs' breeder flocks from the ingestion of harmful quantities of nicarbazin and whether any harm to these fowls resulted from a cause[5] other than such ingestion. In other words, there were many reasonable inferences which the jurors might well have drawn in weighing the credible evidence presented before them to support their verdict for the defendant.

■ "\* \* \* Though this case involves a medical issue, it is no exception to the admonition that, 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. \* \* \* The very essence of its function is to select from among conflicting inferences and conclusions that which it considers the most reasonable. \* \* \* Courts[6] are not free to-reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' \* \* \*" Sentilles v. Inter-Caribbean Shipping Corp. (1959), 361 U.S. 107, 110, 80 S.Ct. 173, 176, 4 L.Ed.2d 142, 145 (headnotes 4 and 5).

■ "\* \* \* In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must compare the opposing proofs and weigh the evidence \* \* \*, and 'it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence \* \* \*.' The power of the trial judge to set aside a verdict as against the weight of the evidence and grant a new trial is thus a check or limitation on the jury's power to render a final and binding verdict, to the end that a miscarriage of justice does not result. However, '[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because

---

4. The only other supplier of feed to the plaintiffs during the crucial period had not used nicarbazin for some time prior thereto and utilized separate milling equipment at all times that this drug was included in products it was processing.

5. The jurors could have reasonably inferred that nicarbazin was surreptitiously introduced into the aged feed samples from which tests were made.

6. Unlike the state trial judge in Tennessee law courts, Werthan Bag Corp. v. Agnew, C.A.6th (1953), 202 F.2d 119, 122 [4], the federal trial judge is not the so-called "13th juror".

the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944) * * *. Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached. In applying these two broad principles defining the permissible limits of court action in granting a new trial on the weight of the evidence, the district judge must, as is generally stated, exercise his sound judicial discretion. * * *" Duncan v. Duncan, supra, 377 F.2d at 52[1–5].

█ As indicated hereinabove, this trial judge thought the evidence preponderated in favor of the plaintiffs and against the defendant and that a result favorable to the plaintiffs would have been more reasonable. But, after careful review and with some reluctance, cf. Cutter v. Cincinnati Union Terminal Co., C.A.6th (1966), 361 F.2d 637, 639[2], this Court cannot say that the verdict of the jury herein was not one which could have been reasonably reached.

" * * * '[W]here no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. * * * [C]lose scrutiny is required in order to protect the litigants' right to jury trial.' * * *" Lind v. Schenley Industries, Inc., supra, 278 F. 2d at 90[17].

The plaintiffs' motion of December 21, 1967 for a new trial hereby is

Overruled.

See also D.C., 289 F.Supp. 280.