434 F.2d 1191
 Charlie M. WEBSTER, Plaintiff-Appellant,
v.
OFFSHORE FOOD SERVICE, INC., et al., Defendants-Appellees.
 No. 30188 Summary Calendar.*
 United States Court of Appeals, Fifth Circuit.
 November 20, 1970.
 Rehearing Denied December 15, 1970.
 
 Charles R. Maloney, New Orleans, La., Thomas M. Breen, New York City, for plaintiff-appellant.
 George V. Baus, Harold A. Thomas, Adams & Reese, New Orleans, La., for Offshore Food Service Inc., Marlin Drilling Co., and the vessel Marlin Drilling Tender No. 3.
 Before BELL, AINSWORTH and GODBOLD, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Charlie Webster, plaintiff in an action brought pursuant to the Jones Act, appeals from the District Court's order granting summary judgment on behalf of all defendants.
 
 
 2
 Appellant was employed by Offshore Food Service Company aboard a submersible drilling rig between January 17 and early August of 1968, working seven days on and seven off. Shortly before commencing this employment he had taken a physical examination which disclosed no evidence of active tuberculosis. In mid-August 1968 he was hospitalized, and in mid-October, after extensive testing, he was diagnosed as having pulmonary tuberculosis. In late October he sued Offshore, as well as the rig and its owner, claiming all were negligent and the vessel unseaworthy. In the course of discovery, the allegations of negligence and unseaworthiness were narrowed to the claim that Arthur Winn, appellant's roommate aboard the rig, persistently spat sputum into an open can in their room.
 
 
 3
 Offshore moved for summary judgment on the basis of an affidavit and medical report of Dr. Ziskind, who had examined Winn in May 1969.[1] This motion was joined by the other defendants. Originally scheduled for hearing in late November 1969, the motion was continued until January 1970, and thereafter was held open to allow plaintiff to take Dr. Ziskind's deposition. At the deposition, taken in February 1970, as in his original affidavit, Dr. Ziskind testified to three vital points. He stated that when he examined Winn he found no evidence of active pulmonary tuberculosis. He stated his opinion that if Winn had had active pulmonary tuberculosis in February 1968, he would have had it in May 1969, for without treatment the disease ease was progressive and 50 per cent fatal within five years, and spontaneous cure was highly unlikely. Finally, he asserted that Winn could have transmitted the disease to appellant only if Winn himself had an active and open case. His conclusion was that appellant could not have contracted the disease from Winn.
 
 
 4
 The deposition was filed with the District Court and included in the papers supporting the motion for summary judgment. Appellant offered no counter affidavits of medical experts tending to show that a person without active tuberculosis might transmit the disease to another person, or that an active case might spontaneously cure itself, and he did not depose Winn as to his past medical history. In short, appellant made no showing that he had contracted the disease from Winn apart from the facts that appellant had no tuberculosis in 1967, that he had it in August 1968, and that in the interim he had roomed with Winn, who spat into an open can.
 
 
 5
 In May the District Court granted summary judgment for defendants. Appellant recognizes that the testimony of Dr. Ziskind is a statement of opinion which would be admissible at trial, but he urges that no opinion testimony is sufficiently probative to form the basis for rendition of summary judgment. We disagree and affirm.
 
 
 6
 For disposition by summary judgment to be appropriate, the moving party must present "evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict" in his favor. Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 624, 64 S. Ct. 724, 727, 88 L.Ed. 967, 971 (1944). It follows that, as is the case with a motion for a directed verdict, the grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony. E. g., Sartor v. Arkansas Nat. Gas Corp.,[2] supra, at 627-628, 64 S.Ct. 724, 88 L.Ed. at 972-973 (summary judgment); Head v. Hargrave, 105 U.S. 45, 49-50, 26 L.Ed. 1028, 1030 (1882) (directed verdict). Of the reasons for this rule, two are significant here. Both proceed from the proposition that once "the court admits [expert] testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony." Sartor, supra, 321 U.S. at 627, 64 S.Ct. at 729, 88 L.Ed. at 973.
 
 
 7
 First, the trier of fact is entitled to weigh the credibility of the witness and to value his testimony in light of his demeanor on the stand. Sartor, supra, at 627-628, 64 S.Ct. 724, 88 L.Ed. at 973; see Loudermilk v. Fidelity & Casualty Co. of New York, 199 F.2d 561, 565-566 (5th Cir. 1952); Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir. 1940). Second, and perhaps more important, is the general recognition that the trier of fact is not bound by expert testimony and may substitute its own common-sense judgment for that of the experts. Sartor, supra, 321 U.S. at 627-628, 64 S.Ct. 724, 88 L.Ed. at 973; Head v. Hargrave, supra; see New York Life Ins. Co. v. Johnston, 256 F.2d 115, 119 (5th Cir. 1958).
 
 
 8
 Neither rationale precludes summary judgment in this case. We do not clearly understand appellant to contend in this court that Dr. Ziskind's credibility is in issue. Even if he did, the contention would be unavailing. The District Court did not reject the testimony as simply unpersuasive, and appellant offered no evidence in opposition to the motion tending to undermine Dr. Ziskind's qualifications or credibility. Our conclusion in this regard is buttressed by the fact that at the request of appellant Dr. Ziskind's testimony was offered by deposition and not by affidavit alone, thereby affording appellant opportunity to cross examine him at length. Cross examination failed to impair the doctor's testimony. See Radio City Music Hall Corp. v. United States, 135 F.2d 715, 718 (2d Cir. 1943).
 
 
 9
 As to the second rationale, the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness, Security-First Nat'l. Bank of Los Angeles v. Lutz, 322 F.2d 348, 355 (9th Cir. 1963), where, as here, the testimony bears on technical questions of medical causation beyond the competence of lay determination. Bearman v. Prudential Ins. Co. of America, 186 F.2d 662, 665 (10th Cir. 1951). Indeed, such opinion testimony may form the basis for a directed verdict. Bear- man, supra.[3] We think it no less true that such testimony may support a motion for summary judgment, and we hold that the testimony offered in support of this motion was adequate.
 
 
 10
 Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed. 2d 142 (1959), upon which appellant heavily relies, is not to the contrary. There it was claimed that a shipboard injury had aggravated plaintiff's previously dormant tubercular condition. Three experts testified with varying degrees of confidence to the possibility that the injury had in fact aggravated the condition, but at minimum each testified that there existed some possibility that the injury had been the cause. A jury verdict for the plaintiff was reversed by the Court of Appeals. The Supreme Court ordered the verdict reinstated, holding that the jury's power to infer that the injury had aggravated the condition was not impaired by the failure of any medical witness to testify with certainty that the injury had caused the aggravation, or by the lack of medical unanimity on the degree of likelihood that it had done so. Sentilles does not reach the question whether the trier of fact may find that a particular phenomenon was the source of plaintiff's disease in the face of unequivocal and uncontradicted testimony to the contrary, given by an expert witness whose qualifications have not been impeached. The only expert testimony in this record, unlike that in Sentilles, is that it was not possible for the phenomenon which appellant claims gave rise to his tuberculosis to have done so, since the claimed causal phenomenon could not have existed. Sentilles does not, therefore, preclude summary judgment in this case.
 
 
 11
 We are not concerned with whether summary judgment would be improper on the basis of testimony such as supports this motion if the opposing party presented contrary opinion evidence, or evidence tending to undermine the credibility or qualifications of the expert witness. Cf. Firemen's Mutual Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5th Cir. 1945). We are dealing solely with the sufficiency of supporting evidence which has not been contradicted. Nor does our holding involve the propriety of summary judgment on the basis of expert testimony in general. We are not confronted with expert testimony which is equivocal or internally inconsistent, or which bears on issues as to which, by their nature, the trier of fact would be entitled to substitute its own practical judgment for the opinion of experts, even though the expert testimony be uncontradicted.[4] We hold only that, in the absence of opposing evidence, the unequivocal testimony offered in support of the motion in this case supported the District Court's conclusion that there was no genuine issue of material fact to be resolved.
 
 
 12
 Since the motion was sufficiently supported, it was incumbent upon appellant to present some evidence contradicting or undermining that of the moving party. This he did not do. No showing was made that, due to the unavailability of opposing evidence, relief might be called for under Rule 56(f). Some six months elapsed between service of the original motion for summary judgment and the District Court's order, and three months between the date of the deposition and the order, during which period appellant was fully apprised of the tenor of defendants' motion. Thus, while appellant contends that the record is lacking in testimony by Winn as to his past medical history, and particularly whether he was ever treated for tuberculosis — matters which appellant contends might have rendered Dr. Ziskind's opinion open to question — this deficiency was appellant's to rectify. And while appellant obliquely contends that summary judgment is improper because of his inability to secure his own medical examination of Winn, who was not a party, the disability imposed by Rule 35(a) would have endured even had the case gone to trial. Such a disability does not relieve the party opposing summary judgment of the burden of showing that there exist issues of fact which require resolution at a full evidentiary hearing. See Radio City Music Hall Corp. v. United States, supra, 135 F.2d at 718.
 
 
 13
 Appellant's final contention is that summary judgment deprives him of the right to trial by jury. This contention is without merit. See Port of Palm Beach Dist. v. Goethals, 104 F.2d 706, 709-710, (5th Cir. 1939).
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F. 2d 409, Part I
 
 
 [1]
 The medical report is not contained in the record. However, the affidavit of Dr. Ziskind states that the medical report was attached, and it appears that a copy of it was in the possession of plaintiff's counsel when, at a later time, the deposition of Dr. Ziskind was taken
 
 
 [2]
 The fact that the expert witnesses inSartor were interested in the outcome was an additional factor which weighed in the balance there, 321 U.S. at 628, 64 S.Ct. 724, 88 L.Ed. at 973. See also Croley v. Matson Navigation Co., 434 F.2d 73 (5th Cir. Nov. 2, 1970).
 
 
 [3]
 It is true that the court which decidedBearman employed a standard in affirming a directed verdict which may be in doubt after Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959). discussed below. However, all experts in Bearman were of the opinion that the injury in question had not caused the death of the insured. On its facts, then, we think the holding of Bearman survives Sentilles.
 
 
 [4]
 E. g., Sartor v. Arkansas Nat. Gas Corp., supra; Head v. Hargrave, supra; Seaboard Surety Co. v. First Nat'l Bank, 263 F.2d 868, 871 (5th Cir. 1959); Stafos v. Mo. Pac. Ry. Co., 367 F.2d 314, 317 (10th Cir. 1966); Rhoades v. United Airlines, Inc., 340 F.2d 481, 485 (3d Cir. 1965).