91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald M. STEVESON, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INC., Defendant-Appellee.
 No. 95-3361.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges, COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Ronald M. Steveson appeals the district court's order granting summary judgment to appellee in his suit under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. For the following reasons, we REVERSE.
 
 I.
 
 2
 CSX Transportation ("CSX"), a railroad common carrier, hired Ronald M. Steveson as a brakeman/conductor in 1976. As a brakeman/conductor, Steveson regularly walked on stone ballast in and around train rails. In 1991, Steveson began to experience problems with his right knee. The persistence of pain in his knee led Steveson to consult his family physician, Dr. Roger Wohlwend, who prescribed a knee brace and medication based upon a diagnosis of internal derangement. Out of concern that the cause of the internal derangement was a torn medial meniscus, Dr. Wohlwend referred Steveson to an orthopedic physician, Dr. Frank Jaeblon, in January 1993. Dr. Jaeblon reported that while he did not see a tear of the medial meniscus, Stevenson's knee showed early degenerative changes.
 
 
 3
 In February 1993 Steveson twisted his knee when he stepped on the ball of a switch handle on the train track. Dr. Jaeblon diagnosed Steveson's condition as a torn medial meniscus, which he described as a tear of the cartilage in the right knee. Dr. Jaeblon surgically repaired Steveson's torn medial meniscus in March 1993. In December 1993 Steveson filed suit against CSX in federal court, alleging that CSX's failure to "tamp" loose ballast and cover oversized ballast with smaller-grade ballast suitable for walking caused the injury to his knee. Specifically, Steveson claimed that he sustained a knee injury due to CSX's use, starting in or around 1991, of oversized ballast and its maintenance of uneven terrain on which he had to walk in order to perform his duties. CSX asserts that plaintiff has presented insufficient evidence that the injury was caused by its presumed negligence. CSX suggests instead that Steveson's injury was caused when he stepped on the switching device.
 
 
 4
 The district court granted CSX's motion for summary judgment on the ground that Steveson failed to show, by a preponderance of the evidence, that the condition of the ballast caused his injury. The parties agree that the sole issue before the court is whether there is sufficient evidence connecting Steveson's years of walking on ballast to his injury.
 
 II.
 
 5
 This court reviews an order granting summary judgment de novo. Russo v. City of Cincinnati, 953 F.2d 1036, 1041 (6th Cir.1992). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant must meet the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989).
 
 
 6
 Once the movant has met this initial burden, the non-movant cannot rest on its pleadings; but rather it must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, admissions and the like, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). With this in mind, this court must examine whether Steveson has established the existence of genuine issues of material fact.
 
 III.
 
 7
 The pertinent Federal Employers' Liability Act section provides:
 
 
 8
 Every common carrier by railroad while engaging in commerce between any of the several states or Territories, ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 
 
 9
 45 U.S.C. § 51. In order to sustain a claim under FELA a plaintiff must show: 1) that he was injured while in the scope of his employment; 2) which employment is in the furtherance of the railroad's interstate transportation business; 3) his employer was negligent; and 4) his employer's negligence played some part in causing the injury for which plaintiff seeks compensation. Green v. River Terminal Ry Co., 763 F.2d at 805, 808 (6th Cir.1985). The fourth requirement--causation--is the only requirement at issue on appeal.
 
 
 10
 The Federal Employers' Liability Act was enacted with a humanitarian purpose and is to be liberally construed by the courts in favor of injured railroad workers. Green, 763 F.2d at 806; see Urie v. Thompson, 337 U.S. 163, 180 (1949). "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." Rogers v. Missouri Pac. R. R. Co., 352 U.S. 500, 510 (1957). Thus, the Supreme Court held that a relaxed standard of causation applies under FELA. Id. at 506.
 
 
 11
 In describing this relaxed standard of causation, the Supreme Court has stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 2404 (1994) (quoting Rogers, 352 U.S. at 506.)
 
 
 12
 Because the standard of proof in FELA cases is much lower than that in a traditional negligence case, summary judgment is inappropriate if the employer's negligence played any part, however slight, in the employee's injuries. Rogers, 352 U.S. at 505-07. This court grappled with a similar case in Mayhew v. Bell Steamship Co., 917 F.2d 961 (6th Cir.1990). In Mayhew an injured seaman brought a suit under the Jones Act (the maritime equivalent to FELA) against the owner of a vessel. The court was required to follow the judicially developed doctrine of liability granted to railroad workers by FELA in determining the outcome of the Jones Act suit. Mayhew, 917 F.2d at 962. In Mayhew this court held:
 
 
 13
 Although a Jones Act [or FELA] plaintiff need not present medical evidence that the defendant's negligence was the proximate cause of the injury, we believe that a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages.
 
 
 14
 Id. at 963. Hence, while an employer's negligence need only play the slightest role in causing the employee's injury, evidence of that causation must be illustrated by more than speculation or mere possibility.
 
 
 15
 However, because of the relaxed standards applied in FELA and Jones Act suits, a medical expert need not be able to articulate to a "reasonable degree of medical certainty" that the defendant's negligence caused the plaintiff's injury. Id. at 964; see also Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 109-10 (1959) (discussing, in the context of the Jones Act, a jury's power to infer causation from circumstances surrounding a plaintiff's injury and working conditions despite "the failure of any medical witnesses to testify [to what] was in fact the cause.")
 
 IV.
 
 16
 The crux of the instant dispute relates to the testimony of Steveson's treating physicians. CSX maintained successfully before the trial court that the two physicians, Drs. Wohlwend and Jaeblon, failed to opine, to a reasonable degree of medical certainty, that Steveson's injuries were caused by walking on loose and uneven ballast. CSX acknowledges, however, that an expert's opinion relating a plaintiff's injury to a defendant's negligence need not be couched in terms of a "reasonable degree of medical certainty." The expert need only opine that it is "likely" or "more than possible" that the defendant's negligence had a causal relationship with the injury. See Mayhew, 917 F.2d at 964. Here, contrary to the finding of the trial court, both doctors provided testimony establishing the probability of causation. Notably, Dr. Jaeblon testified in his deposition that it was "very probable" that stepping on ballast and the twisting of Steveson's knee over a period of time--17 years--could have caused the injury to the cartilage in his knee. This testimony is not eviscerated by the fact that Steveson may have exacerbated problems with his knee by stepping on a switch ball in 1993. Under FELA's relaxed causation standard, the doctors' testimony as a whole was sufficient to establish more than a possibility that the subject injury was caused by the conditions of the workplace.
 
 
 17
 Our decision does not mean that Steveson will prevail at trial. It simply means that, under the undisputed facts before the district court, the law provides for a trial by jury in this case. The district court was in error in determining that summary judgment was appropriate.
 
 
 18
 For the foregoing reasons, we reverse the district court's order granting summary judgment and REMAND this case to the district court for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation