GREEN, J.
Hector Jose Barahona, a former seaman, appeals a final summary judgment in favor of Kloster Cruise LTD d/b/a Norwegian Cruise Lines (“Norwegian”) in this Jones Act[1] case for failure to treat and failure to provide maintenance and cure. We reverse the final summary judgment on the issue of failure to treat but affirm it on the issue of failure to provide maintenance and cure.
Barahona began working for Norwegian aboard the M/S Seaward in 1991 as a cleaner and assistant linen keeper. In 1995, Barahona sought the attention of the ship’s physician for a rash he developed on his arms and head. The physician diagnosed his condition as psoriasis.
Initially, the ship’s physician prescribed oral steroids and ointment for Barahona’s condition. When Barahona’s symptoms failed to improve, the physician referred Barahona to a specialist in Barbados who also prescribed ointment. After the ship returned to Miami, Barahona received further treatment for the psoriasis. Norwegian paid for the cost of his treatment, food, and lodging during this time. When he returned to work, Norwegian provided Barahona with ointment and permitted him to sunbathe each day, as sunbathing was recommended for his condition. Bara-hona left the M/S Seaward in July of 1995 because he had obtained resident alien status and wanted to spend more time with his family in Miami.
Barahona did not seek additional treatment for his psoriasis until 1998, when he contacted an attorney, who referred him to two physicians, each of whom prescribed ointments and recommended sunbathing. Barahona subsequently filed a six-count *237 complaint against Norwegian under the Jones Act. Barahona claimed that Norwegian’s negligence caused his psoriasis, that its failure to provide adequate medical care exacerbated the condition, and that as a result, he suffered numerous and extensive damages.
Norwegian filed a motion for summary judgment on all counts of Barahona’s complaint. At the hearing on the same, Bara-hona agreed to drop all counts against Norwegian except for his failure to treat and failure to provide maintenance and cure claims. In support of its motion on the remaining claims, Norwegian filed the deposition of Dr. Stephen Presser, Baraho-na’s own expert dermatologist. Dr. Presser testified, among other things, that treating psoriasis with oral steroids, as the ship’s physician had done for Barahona, is improper because it is possible that the condition can later reoccur once the medication is stopped. Dr. Presser stated, however, that he could not say, within a reasonable degree of medical certainty, whether the use of oral steroids in treating Barahona had, in fact, exacerbated his condition. Norwegian argued that Dr. Presser’s testimony, based only on medical possibility, was inadequate to overcome its motion for summary judgement. The trial court granted summary judgment for Norwegian on both counts, finding that there was no evidence of negligence by Norwegian’s shipboard or shoreside physicians that resulted in injury to Barahona, and that Barahona had reached maximum medical improvement for his condition.
On this appeal, Barahona first argues that the trial court incorrectly granted summary judgement for Norwegian on the issue of failure to treat. Barahona claims that Dr. Presser’s deposition testimony that the shipboard physician’s treatment of Barahona’s psoriasis with oral steroids possibly exacerbated his condition, created an issue of fact for a jury.
Norwegian responds that since Dr. Presser’s testimony was based only on medical possibility, not probability, it failed to establish proximate causation for this medical negligence claim. Norwegian argues that a Jones Act plaintiff must present evidence that there is more than a mere possibility that a causal relationship exists between the defendant’s wrongdoing and the injury. We disagree.
The United States Supreme Court addressed this issue in the Jones Act case of Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959). In Sentilles, the plaintiff claimed that an accident aboard the defendant’s vessel activated or aggravated a previously latent tubercular condition. One specialist opined that acute dissemination of the tuberculosis might be a consequence of the accident. Id. at 109, 80 S.Ct. 173. Another treating specialist opined that the trauma and plaintiffs preexisting diabetes was the most likely cause of the aggravation of the tuberculosis, although he could not state which of the two was more likely responsible in this instance. Id. Still another medical expert, who had not personally examined the plaintiff, opined that the accident probably aggravated his condition, though he could not state definitively. Id.
The jury returned its verdict in favor of the plaintiff. The Fifth Circuit Court of Appeal reversed the final judgment based upon the defendant’s claim that the medical evidence on the causation issue was insufficient where it was based upon mere possibility. The Supreme Court granted certiorari and disagreed, concluding that the jury was entitled to consider all of the medical testimony adduced at trial no matter how it was worded:
*238 The jury’s power to draw the inference that the aggravation of [the plaintiffs condition] ... was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation. They were entitled to take all the circumstances, including the medical testimony into consideration.
Id. at 109-10, 80 S.Ct. 173 (footnotes and citations omitted); see also Central Gulf Steamship Corp. v. Sambula, 405 F.2d 291 (5th Cir.1968); Jason Bruce v. Global Marine Drilling Co., 2001 WL 1175115 (E.D.La.2001); Cintorino v. Ocean Ships, Inc., 2000 WL 33179300 (D.Haw.2000).
In the instant case, we conclude that Dr. Presser’s testimony sufficiently created a jury question on the issue of causation to withstand Norwegian’s motion for summary judgment. Dr. Presser’s testimony goes directly to the issue of whether or not Norwegian is liable for its shipboard and/or shoreside physicians’ alleged failure to properly treat Barahona’s psoriasis. It is of no moment in this case that Dr. Presser cannot conclusively state or state within a reasonable degree of medical probability that the administration of the oral steroids exacerbated Barahona’s condition. That issue is for the jury’s determination. We therefore reverse the trial court’s order granting summary judgment for Norwegian on the issue of failure to treat, and remand for further proceedings.
We next address the final summary judgment as it relates to the issue of Norwegian’s failure to provide maintenance and cure. An action for maintenance and cure under the Jones Act is a maritime remedy “designed to provide a seaman with food and lodging when he becomes sick or injured in the ship’s service; and it extends during the period when he is incapacitated to do a seaman’s work.... ” Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); see also Potashnick-Badgett Dredging Inc. v. Whitfield, 269 So.2d 36, 40 n. 2 (Fla. 4th DCA 1972). A ship owner’s duty to pay maintenance and cure terminates as soon as the seaman reaches the point of maximum cure, or maximum medical improvement. See Vella v. Ford Motor Co., 421 U.S. 1, 5, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).
Barahona suffers from guttate and plaque psoriasis, two variations of the condition. Both Barahona’s own expert dermatologist, Dr. Presser, and his treating physician, Dr. Feinstein, testified in their depositions that both guttate and plaque psoriasis were chronic conditions for which Barahona would have to undergo treatment for the rest of his life. Under the Jones Act, the definition of “maximum medical improvement” has not required shipowners to provide injured seamen maintenance and cure for a set, specific amount of time. Instead, modern courts have required that maintenance and cure continue “until such time as the incapacity is declared to be permanent,” Vella, 421 U.S. at 5, 95 S.Ct. 1381, or where it appears that “future treatment will merely relieve pain and suffering but not otherwise improve the seaman’s physical condition,” Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir.1979).
*239 Given the testimony of both Dr. Presser and Dr. Feinstein that Barahona’s psoriasis condition was unable to be cured completely, and that when Barahona left his position with Norwegian, he controlled his psoriasis with ointment and was sunbathing as recommended by his physicians, there are no issues of material fact on the question of whether Barahona has reached “maximum medical improvement.” Furthermore, Norwegian fulfilled its duty to Barahona to provide and pay for his medical treatment while he was employed with the cruise line. Therefore, we find that the trial court was correct in granting summary judgment for Norwegian on the issue of maintenance and cure, and affirm.
Reversed and remanded in part, affirmed in part.

. See 46 U.S.C.App. § 688.